## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

GEORGE H. ZAVAKOS,                                    :

                            Plaintiff,

           -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                        Defendant.         :

Case No. 3:07-cv-058

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on November 9, 2001, alleging disability from April 2, 2000. (Tr. 173; 838). Plaintiff's applications were denied at the initial step of the administrative process and Plaintiff took no further appeal. (Tr. 129; 843-46).

Plaintiff again filed applications for SSD and SSI on September 18, 2002, alleging disability from April 2, 2000, due to mental and back impairments. (Tr. 176-78; 848-50; 225-34). Plaintiff's applications were denied initially and on reconsideration. (Tr. 133-36, 138-40; 852-55, 857-59). Administrative Law Judge Daniel Shell held three hearings, (Tr. 48-78; 79-107; 108-25), and ultimately determined that Plaintiff is not disabled. (Tr. 15-37). The Appeals Council denied Plaintiff's request for review, (Tr.10-12), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that Plaintiff met the insured status requirements of the Act through December 31, 2005. (Tr. 35, finding 1). Judge Shell also found that Plaintiff has severe degenerative disc disease and affective disorder characterized by mild depression and anxiety, but that he does not have an impairment or combination of impairments that meet or equals the Listings. *Id.*, finding 3. Judge Shell found further that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id.,* finding 5. Judge Shell then used section 203.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 36, findings 10, 11). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 37).

4

Plaintiff has a history of back pain and in 1998, he experienced an exacerbation and participated in physical therapy during September, 1998.  (Tr. 274-77).

In February, 1999, Plaintiff was hospitalized for treatment of major depression, suicidal, and alcohol abuse dependent.  (Tr. 278-93).

Examining physician Dr. Danopulos reported on January 10, 2002, that Plaintiff moved freely in the exam room, his upper and lower extremities had full ranges of motion, he had a normal gait, his spine was painless to pressure, and his paravertebral muscles were painless to palpation and pressure. (Tr. 294-312).  Dr. Danopulos also reported that Plaintiff got on and off the exam table without difficulty, his straight leg raising was positive at 70 degrees bilaterally, he was able to squat and rise from a squat, and that his toe and heel gait was normal. *Id.*  Dr. Danopulos noted that Plaintiff's sensory exam and deep tendon reflexes were normal, his lumbar spine x-rays revealed scoliosis, mild spondylosis, and that the objective findings were rule out spine arthritis, lumbar spine arthritis, severe headaches of unknown origin, well-controlled hypertension, gastroesophageal reflux with chronic gastritis, primary depression, and social misery. *Id.*  Dr. Danopulos opined that Plaintiff's ability to perform work-related activities was affected mainly by his primary depression which triggered social misery, lumbar spine arthritis and rule out cervical spine arthritis, severe headaches, and his adjustment problems to the social life. *Id.*

Examining psychologist Dr. McIntosh reported on February 11, 2002, that Plaintiff was a high school graduate, had a problem with alcohol from 1977 until 13 months prior to the examination, that he was currently an active member in AA, that he had used various drugs in the past including heroin, cocaine, and cannabis, that he had not used drugs for about 15 years, and that he had a history of head injuries. (Tr. 313-20).  Dr. McIntosh also reported that Plaintiff maintained

5

a fairly composed affect, was near tears on several occasions during the interview and cried openly once, that his mood was depressed, that specific signs of anxiety were not evident, that he was alert and oriented, his memory for recent and past events seemed fairly good, and that his interpretation of proverbs was fairly good.  *Id.*  Dr. McIntosh noted that Plaintiff was preoccupied about having shelter and something to eat and obsessed about staying sober, his verbal IQ was 92, his performance IQ was 86, and his full scale IQ was 89, that he scored in the low average range, that testing revealed his memory fell in the average range, and that he read at the 9.5 grade level.  *Id.* Dr. McIntosh identified Plaintiff's diagnoses as major depression, recurrent and severe without psychotic symptoms, posttraumatic stress disorder, and alcohol dependence in early full remission. *Id.*  Dr. McIntosh assigned Plaintiff a GAF of 48 and opined that his ability to understand, remember, and carry out one or two-step job instructions was minimally impaired, he would have difficulty interacting with others, his capacity to withstand the stress and pressure of day-to-day work activity was quite limited, and that his capacity to maintain concentration and attention sufficient for simple repetitive tasks was moderately limited.  *Id.*  Dr. McIntosh also opined that if Plaintiff were awarded benefits, it might be advisable to have a payee assigned given that he has had limited sobriety.  *Id.*

Dr. Danopulos examined Plaintiff again on November 26, 2002, and reported that Plaintiff had full ranges of motion of the upper and lower extremities, painful right hip motions, a normal gait, and that his spine was painful to pressure at the cervical and lumbosacral areas.  (Tr. 354-63).  Dr. Danopulos also reported that Plaintiff had normal but painful cervical spine motions, soft paravertebral muscles, positive straight leg raisings at 70 degrees, and that his lumbosacral spine motions were restricted and painful.  *Id.*  Dr. Danopulos noted that there was no evidence of nerve

6

root compression or peripheral neuropathy, his motor strength was normal, and his sensory exam and reflexes were normal. *Id.* Dr. Danopulos noted further that lumbosacral spine x-rays revealed lumbar scoliosis and spondylosis with facet arthropathy and degenerative retrolisthesis. *Id.* Dr. Danopulos also noted that the objective findings were lumbar spine arthritis with disc disease, rule out cervical spine arthritis or arthralgias, non-specific headaches, right hip arthralgias, well-controlled hypertension, well-controlled mature onset, non-insulin dependent diabetes, history of acid reflux being treated properly, and primary depression. *Id.* Dr. Danopulos opined that Plaintiff's abilities to perform any work-related activities were affected and restricted by the combination of his lumbosacral spine condition plus depression. *Id.*

Plaintiff was evaluated at the Miami Valley Hospital Pain Center on December 12, 2002, and at that time, Dr. Smith reported that Plaintiff had diffuse tenderness over the cervical spine, shoulders, midline thoracic and lumbar spines, 5/5 muscle strength of the upper extremities, 2+ reflexes bilaterally, and 5/5 muscle strength of the lower extremities. (Tr. 617-19). Dr. Townsend also reported that Plaintiff's pain was so generalized that it was unlikely that any specific interventional injection would resolve his symptoms and he recommended treating Plaintiff with medications and physical therapy. *Id.*

Examining psychologist Dr. Bromberg reported on February 5, 2003, that Plaintiff was currently receiving mental health treatment which he started about 2 months prior to the examination, drank excessively for 27-28 years but had not drunk for 2 years, has used marijuana, hash, LSD, cocaine, heroin, dilaudid, and other drugs before stopping about 15-18 years ago, has been psychiatrically hospitalized, his psychomotor behaviors appeared agitated, his affect appeared blunted, and that his facial expression was unsmiling. (Tr. 364-68). Dr. Bromberg also reported that

Plaintiff's mood appeared anxious, his energy appeared low, he was alert and oriented, his judgment appeared to be adequate, and that his diagnoses were dysthymic disorder, anxiety disorder NOS, alcohol abuse (self-reported remission of 2 years), and personality disorder. *Id.* Dr. Bromberg assigned Plaintiff a GAF of 50 and opined that Plaintiff's ability to relate to others was moderately impaired, his ability to understand, remember, and follow instructions was not impaired, his ability to maintain attention, concentration, persistence and pace to perform simple repetitive tasks was moderately impaired, his ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired, and that he would not need assistance to manage his money in his best interest. *Id.*

The record contains a copy of Plaintiff's voluminous treatment notes from the Good Samaritan Hospital Clinic dated February, 2001, through August, 2004. (Tr. 369-577; 620-25; 738-52). Those notes reveal that Plaintiff received general medical care at that facility. *Id.*

In May, 2003, Dr. Lodhi of the Good Samaritan Clinic reported that Plaintiff had low back pain and headaches, that his low back was tender, he did not have any neurological findings, and that he had normal gait, was able to perform fine and gross manipulation, and that his remaining physical findings were normal. (Tr. 369-73).

Dr. Akella of the Good Samaritan Clinic reported on August 27, 2004, that Plaintiff was able to lift/carry less than 5 pounds occasionally, able to stand/walk for 4-5 hours in an 8-hour day and for less than 1 hour without interruption, able to sit for 4-5 hours in an 8-hour day and for less than 1 hour without interruption, and that he was able to perform sedentary work. (Tr. 738-42). Dr. Akella also reported that Plaintiff was currently participating in physical therapy and that his prognosis was fair to good. *Id.*

An MRI of Plaintiff's lumbar spine performed July 13, 2004, revealed multilevel degenerative disc changes, diffuse disc bulges at multiple levels with the most severe at L2-L3, and facet hypertrophic osteophytic bony spurring and degenerative changes present throughout the lumbar spine. (Tr. 750-51). It was noted that when compared to the prior MRI of October, 2002, the degenerative changes had progressed in the lumbar spine. *Id.*

Examining psychologist Dr. Bonds reported on May 20, 2005, that Plaintiff graduated from high school, attended a real estate school and got his license but lost it because he did not follow through with continuing education requirements, sees a psychiatrist once a month and a therapist twice a month, quite drinking in 1999 although he had a relapse in 2003, and that he stopped using drugs in 1985. (Tr. 796–807). Dr. Bonds also reported that Plaintiff's mood seemed mildly depressed, his affect was broad, he seemed a little nervous, was alert and oriented, had some insight into his problems, had sufficient judgment and reasoning abilities to live independently, and that he was able to make important decisions about his future and manage funds without supervision. *Id.* Dr. Bonds noted that Plaintiff's verbal IQ was 79, his performance IQ was 85, his full scale IQ was 80, that he was in the borderline to low average range of intellectual functioning, that there may have been a decline in his overall intellectual functioning since Dr. McIntosh examined him in January, 2002, that his general memory functioning was in the low average to borderline range, and that his reading comprehension was at the 9th grade level, his reading rate was at the 6th grade level, and his reading accuracy was at the 5th grade level. *Id.* Dr. Bonds opined that Plaintiff's diagnoses were major depressive disorder, severe with psychotic features and alcohol dependence reported in sustained full remission and he assigned Plaintiff a GAF of 50. *Id.* Dr. Bonds also opined that Plaintiff's ability to get along with others was mildly limited, his ability to understand, remember,

and follow directions was mildly limited, his ability to maintain concentration, persistence, and attention to perform simple, repetitive tasks was not limited, and that his ability to withstand the stress and pressures associated with day-to-day work activities was moderately limited. *Id.*

Plaintiff participated in physical therapy during the period July 29 to August 19, 2004. (Tr. 753-59).

The transcript contains a copy of Plaintiff's voluminous mental health treatment notes from the Good Samaritan Counseling Center dated February 20, 2001, through October 12, 2005. (Tr. 578-95; 626-737; 760-95; 808-37). Those notes reveal that Plaintiff received mental health treatment from a counselor as well as a psychiatrist, Dr. Songer. *Id.* Plaintiff's diagnoses were identified as major depressive disorder, recurrent, posttraumatic stress disorder, alcohol dependence in sustained remission, and cocaine dependence in sustained remission. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff's mental impairment did not meet or equal the Listing and that he could perform low stress simple work. (Tr. 112-22). The MA also testified that Plaintiff's test scores were not consistent with an impaired memory. *Id*.

In his Statement of Errors, Plaintiff argues that the Commissioner erred by finding that he is capable of performing a limited range of medium work because he improperly weighed treating psychiatrist Dr. Songer's opinion and by failing to properly weigh Dr. Akella's opinion with respect to his back impairment. (Tr. 13).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of

10

treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by

the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Failure to consider the record as a whole undermines the Commissioner's conclusion. *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 518 (6th Cir. 1985), *citing, Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1973).

> In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. It is more than merely "helpful" for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.

*Hurst,* 753 F.2d at 519 (citation omitted). Even though an ALJ is not bound by a treating physician's opinion, he must set forth his reasons for rejecting the opinion. *See Bowen v. Commissioner of Social Security,* 478 F.3d 742 (6th Cir. 2007); *see also, Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

As noted above, the record contains a copy of Plaintiff's voluminous treatment notes dated February, 2001, through October 12, 2005, from the Good Samaritan Counseling Center where Dr. Songer has been Plaintiff's treating psychiatrist. *See* Tr. 578-95; 626-737; 760-95; 808-37. However, a review of Judge Shell's decision shows that while he referred to parts of Dr. Songer's treatment notes, *see, e.g.,* Tr. 26-27, he failed to set forth his reasons for rejecting Dr. Songer's opinions that Plaintiff is essentially disabled due to his alleged mental impairments. *See, e.g.,* Tr. 30-32.

As the *Hurst* court noted, tt is more than merely "helpful" for the ALJ to articulate

reasons for crediting or rejecting particular sources of evidence; it is absolutely essential for meaningful appellate review. In the absence of reasons for rejecting Dr. Songer's opinions, this Court simply cannot engage in meaningful judicial review of the Commissioner's decision. Of course, in reaching this conclusion, this Court is not suggesting that it would, or would not be reasonable for the Commissioner to reject Dr. Songer's opinions. Rather, the Court concludes that the Commissioner's failure to consider the record as a whole undermines his conclusion that Plaintiff is not disabled. Accordingly, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that not all of the factual issues have been resolved and that the record does not adequately establish Plaintiff's entitlement to benefits. Therefore, the matter should be remanded to the Commissioner for further administrative proceedings.     This Court notes that this is a fourth sentence remand. *Finkelstein*, *supra*.

Therefore, it is recommended that judgment be entered in favor of Plaintiff and against the Commissioner reversing the Commissioner's decision that Plaintiff is not disabled. In addition, this matter should be remanded to the Commissioner for additional administrative proceedings consistent with this Report as well as any further administrative proceedings necessary to determine whether Plaintiff is disabled.

January 4, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).